142600 United States of America v. Jeffrey DeWitt Doxey, oral argument not to exceed 15 minutes per side, Mr. Kevin M. Carlson, supervising attorney, and arguing today, law student, Ms. Amanda Urban. Good morning, may it please the court. My name is Kevin Carlson of the University of Michigan Law School Federal Appellate Litigation Clinic. I'm here to introduce Amanda Urban, who will be arguing the case for our client, Jeffrey Doxey. Good morning, your honors. May I please reserve three minutes for rebuttal? All right. Thank you. May it please the court, my name is Amanda Urban, appearing here today on behalf of the appellate, Mr. Jeffrey Doxey. Five officers forcefully pinned down a naked Mr. Doxey under the table in a police interrogation room, while a sixth non-medical officer proceeded to perform a physical anal search. There are few other exercises by the government that can intrude on an individual's privacy and dignity as severely as visual anal and genital searches. And Mr. Doxey underwent one of these visual searches and then suffered the additional indignity and danger of being forced to submit to a physical anal search. This conduct cannot and does not comport with the Fourth Amendment standard for invasive searches. And for those reasons, we ask this court to reverse the district court's denial of Mr. Doxey's motion to suppress and remand for a new trial. Invasive searches are those that intrude on an area that has a heightened privacy interest. They can range from visual searches of the anal and genital regions, to minor intrusions such as blood draws, to the physically invasive search we have here. And in this case, the government has failed all three prongs under the standard... I have a question of that. The facts is, I think, the trial court understood them, is that the heroin was being... was secured sort of between his buttocks cheeks, not in his anus. No, Your Honor. The record does have evidence that the heroin was contained further within his body. Officer Marshall testified that he was only able to see a glimpse of the plastic baggie after five officers had wrestled, contorted Mr. Doxey's body, pinned him down. Then a glimpse was available. He also testified at trial that he had to reach in there in order to be able to knock the object out. In addition, even if... But he also said he flicked it out. Yes, he used the words knocked out and the words flicked out. After five officers had wrestled with Mr. Doxey, moving, contorting his body, that's when he was able to do so. And even if we were to take the facts in the government's framing and agree that the object was sitting just outside of the anal cavity, that is still an invasive search. Under Winston v. Lee, invasive searches include even just visual searches of the anal and genital regions. And so therefore, this court should apply that standard when reviewing the constitutionality of this search. And under that standard, the government has failed all three prongs. First, the threat to Mr. Doxey's health and safety was extensive. The intrusion on his privacy and dignity was severe. And most importantly, there is no community interest that requires the officers performing this invasive search in the first place. Why do you keep characterizing this as an invasive search when the officer says that he merely observed this object between the buttocks and flicked it out with his hand and that's all there was to it? We've got two versions of what transpired here, the defendant's version and the officer's version. And the district judge found your client not to be credible and found the officer's to be credible. So we have to defer it. Don't we have to defer it to the credibility findings of the judge here? That's correct, Your Honor. But the legal standard that should be applied is based on the Supreme Court's rulings in Winston v. Lee as well as Bell v. Wolffish where the Supreme Court found that even visual inspections of anal and genital regions of prisoners who have significantly diminished rights are considered invasive searches that require a different review under the Fourth Amendment. And this circuit... But he wasn't a prisoner subject to the protection of the Eighth Amendment. He was a suspect being arrested and there's a factual dispute as to whether he consented to the search. And it's undisputed that he did consent at the beginning of the interaction and communication between the defendant and the officers. There might be an issue as to whether at some point he attempted to withdraw his consent or what occurred. There might be some factual dispute as to what happened at the scene where there was an altercation that developed. But all of this began with his consent to the search, including his disrobing. Yes and no, Your Honor. Mr. Doxey did consent to the visual search of his person. That is undisputed. However, it's also undisputed that Mr. Doxey did not consent to a physical search of his person. And as soon as it became apparent that the visual search was then going to transpire into a physical search, Mr. Doxey did not provide consent and he adamantly objected. And the reason... What do you mean when you say physical search? Any search of his person would be a physical search. Are you... What do you mean when you say that? Physical search in the sense that Mr. Doxey was naked and exposed and the officers were going to search an area of his body that enjoys a heightened privacy interest, which the Supreme Court in Rochin has stated that those searches of areas that enjoy a heightened privacy interest must be examined under the Fourth Amendment under a different standard. And this circuit in Booker, United States v. Booker, has adopted that standard. Just to go back to the facts, the search commenced at his girlfriend's house initially. Is that right? Initially, the search commenced when he was pulled over on the side of the road. And then, yes, he was later transported to his girlfriend's house. And he was also searched there and then transported to the police station house. Okay, he consented to the search at his girlfriend's house. And as a part of the process of the search, he voluntarily disrobed. Would you admit to that? Yes. Yes, Your Honor. And as a part of and in conjunction with his disrobing, the officers thought that they observed him pressing his butt cheeks together as though he was concealing something. Correct. Correct? Correct. So they had already made that observation pursuant to his consent. And then they moved theóall of this was moved to the police station or wherever, the police facility. And he again consented initially to the search. Correct? Visual search. Correct, Your Honor. So he was disrobed again, and the officers apparently thought he was concealing something again in his butt cheeks. And somehow an argument or some altercation developed. But the officer then testified that he flicked this object out with his hand or his finger. And that's basically what occurred there. So there might be an issue of whether he withdrew his consent or was entitled to withdraw his consent. But those are the basic factual outlines of what occurred, is it not? Correct, Your Honor. However, plainly put, the manner of the search is what we're here. The manner of the search matters. We're not contesting that Mr. Doxey consented to the visual search. We're contesting that even when officers are able to perform a search, they must do so in the proper manner, which is why there's a different standard under the Fourth Amendment for invasive searches, because that standardó So what's the standard and how didn't they meet it? The standard looks at three prongsóthe threat to the health and safety of the individual, the extent of the intrusion on the individual's bodily integrity and privacy, and the community's interest in needing to perform an invasive search, as opposed to being able to accomplish the police crime-fighting goals in another manner. And so in this instance, the government fails all three of those prongs. In United States v. Schmerber, the court warned that serious questions would arise if a search was performed using a rudimentary, very basic medical technique by someone other than a medical officer or in a non-medical environment. And the court stated, for example, if such a search were performed in the privacy of the police station house. And that is exactly what we have in this case. Let me ask you this. If the search occurred in the way that the officers testified, how was the search invasive? They didn'tóaccording to the police, they didn't enter the man's rectum or exacerbate the conditions. All they did was flick this object out. Now, how was that invasive? I think, Your Honor, the struggle is between what you think of as a common knowledge definition of invasive versus how invasive has been defined by this court and the Supreme Court's precedent. And so if we looked at this court's precedent in cases such as Dufrin and Dabrowski and the Supreme Court's precedent in Bell and several other cases, invasive searches are simply those that intrude upon an area that enjoys a heightened privacy interest. And so therefore, even visual inspections of the anal cavity or anal region or the genital region are invasive. And that's not to say that invasive searches are unconstitutional. It's simply to say that because it's invading on this heightened privacy area, we want to be certain that it doesn't threaten health and safety, that the intrusion's not too severe, and that there's a real community interest for needing to be intruding on this heightened privacy area. And I think we'd all agree that the areaó They already exposed themselves and exposed his body to inspection if we're to believe the officers. So I'm having trouble finding where they furtherówhere the intrusion was beyond what was proper or might be permitted. Are you familiar with our case of U.S. v. Brooker where there was an anal cavity searchó Yes. The man was taken to the hospital and he was paralyzed and they entered his body cavities and all that. This is quite a bit different from that kind of situation, wouldn't you think? Yes, Your Honor, in some important ways. In Booker, the court found that there was a threat to the individual's health and safety even though a medical professional was performing that procedure. Granted, that procedure was more invasive, and here we have a less invasive procedure, but it's being performed by a non-medical professional in an unsanitary environment. There's no indication that Officer Marshall put on sanitary gloves, or there's no indication that when he removed the object, it could have torn. It could have exposed Mr. Doxey to its contents, which easily could have put him at serious medical risk, which is why there are procedures in place for these kinds of searches to be performed safely. All the officers had to do was to detain Mr. Doxey. They could have arrested him on charges for marijuana, they could have detained him, and they could have waited to obtain this evidence. There was no need for this search. They could have... So, let me just... Charney, you are saying that it's the way they did it that's the problem. Correct. Yes. Okay. So, you're not claiming that they couldn't lawfully get to it. You're saying that they had to... Did they have to get a warrant? Only if they wanted to have an independent medical professional at a hospital perform the search, then they would have needed a warrant. Okay. And did they... Are you saying that they had to do that? That's one of the three options. They could have done that. They could have detained Mr. Doxey and held him until he had a bowel movement and it naturally would have revealed itself. Or, most importantly, they could have taken him to jail as he requested where there would have been medically trained officers on staff who are trained to perform these types of searches. Okay. So, what I hear you describe is something that was concealed in the anal cavity that had a chance of breaking and becoming a health risk. And I just don't think that those are the facts that the court found. I mean, I think that basically the case proceeded on the assumption that he was holding something between his butt cheeks, but it was not up his anus and that that's why he was able to just sort of flick it. I mean, it's almost like we're talking about two different cases. No, Your Honor. Even taking that version of the facts, that baggie still could have torn and been right outside of his anal cavity, the contents of that baggie still could have gotten into his anal cavity. Or Officer Marshall, in performing the search without any gloves or safety material, could have contaminated his anal region area, could have scratched or torn his skin, in which case the blood would be exposed and it would be able to get in that way. There's just any number of risks that we don't know once you're dealing with an untrained person who is up and around the anal cavity. Even if they're outside of it, even if they're in between the butt cheeks and they're not going inside, there's still severe medical risk there, which is why in cases where a search like this is necessary, where the evidence is at risk for disappearing or there's a medical emergency or the officers don't have other... It's necessary, right? I'm sorry, say that again. We concede that a search like this is necessary of some sort, right? Yes, in the sense that there's some need to retrieve the evidence. That is what we concede. They could have monitored and detained Mr. Doxey. There are cases where individuals have been detained for up to 12 hours until he had to go to the bathroom, and even if it's in between his buttocks, at that point it's going to have to come out. Also, there's where he could be taken to the jail, and it could be removed there. The issue is that there was no reason why Officer Marshall had to have five other officers come in, wrestle with Mr. Doxey, contort his body, and pull or flick, knock this object out of there without any sanitization, without any safety measures. The issue is that Mr. Doxey's case may only be this severe of an intrusion, but there are many other cases that may never reach this court where the officer takes it maybe just a little bit further and just gets a little bit more invasive. Why not draw the line at a safe area that, one, allows police to do their jobs? This is not going to inhibit officers from being able to obtain the evidence in these cases by enforcing the Fourth Amendment standard on proceeding safely. However, it is going to protect the cases where officers get just a little bit more invasive or a little bit more invasive by making it clear that under the Fourth Amendment, not only must the search be justified, the search must be performed reasonably. And this is something common to Ninth and Seventh Circuit cases where they deal with smuggling in the anal canal. Oh, I'm so sorry, my time has expired. I think we have your position in hand, and I know you're out of time, but one last question here. I understand that your client, as a condition of his parole and he was on parole, had consented to searches of himself in connection with his parole. What do you have to say about that? Simply, Your Honor, that the suspicionless search provision of his parole pertains to justification for the search, but it doesn't allow officers to perform that search any way they want. If it did, then an officer could stop a parolee on the street with no suspicion, put him in the back of his squad car, pin him down, take a rusty knife, cut into his skin to get evidence out, and that would be justified by a parole condition, which clearly is not the case. So even though they must submit to a search, they must submit to a search done in a safe and reasonable manner. All right. You'll have your three minutes for rebuttal. Thank you. Good morning. Good morning. Sally Behrens on behalf of the United States. May it please the Court. I think it probably makes sense in this case to start at the beginning, which is what happened in the district court. There the suppression issue raised is a very different suppression issue than the one that's raised today in the briefing. There the issue was really the initial contact with the defendant and whether or not the search that happened in the vehicle was improper and then whether the heroin was the fruit of the poisonous tree. The issue that the defendant raises now is really not remotely the same issue that was before the district court, although the record was developed as to the actual search itself. So the government takes the position that plain error would apply to the court's review of this issue. Moving forward from that, I think it makes sense to discuss the PC, the probable cause that was developed for the search of Mr. Doxey's person. It's worth looking back at the fact that officers began investigating Mr. Doxey because two defendants in a different case indicated that Mr. Doxey had traded them heroin for guns. The officers then developed another confidential informant who also said that Mr. Doxey had heroin and was in possession of heroin and was dealing heroin. After the officers surveilled Mr. Doxey, they saw him doing what they believed to be a hand-to-hand transaction in a gas station. He then pulled his car over after they followed him for a little bit. When they made contact, there was a marijuana blunt in the car along with a digital scale. He had on his person $1,560 wrapped in $100 increments. When the police took Mr. Doxey back to his girlfriend's house and she allowed them to search the house by consent, there was a mason jar with heroin in it, and Mr. Doxey was visibly clenching his buttocks, which the officers know from experience over and over again is indicative that he is hiding drugs in his buttocks area. They asked him to drop his pants so that they could do a search and look for the heroin. He began to do so, and he allowed them to visualize the front of him, as the court has noted, but then backed himself up against the kitchen cabinet so that they couldn't see his behind. At that point, the officers had probable cause that he was hiding heroin on his person and in his buttocks. They didn't do a search there. They took him to the police station. They called his parole officer to find out, to make sure that he had a consent search provision in his parole requirements. And only at that point did they say to him, look, we need to do a search of your person. We know you're hiding something there. And he again agreed. He again dropped his pants. He was uncuffed. He himself dropped his pants and again allowed them to visualize the front portion of his person but wouldn't allow them to visualize the back. And only at that point did the officers restrain him, and as the court has noted, they could see the baggie eventually when they were able to see his behind, and they flicked it out of his buttocks area. There is no evidence other than one statement that the court found incredible and that is frankly ambiguous by Mr. Doxey that indicates that there was any sort of anal cavity search in this case. This is the normal type of strip search of the lower half. Wasn't there some activity, some physical activity, where they had to get him down? They absolutely had to restrain him, and he fought with them to avoid showing him his backside. But once the officers have the right to search him, they certainly have the right to restrain him in order to do it. The defendant's position seems to be that this was not done carefully enough to preserve his safety, but I don't think that that's even remotely true based on the facts of this case. The first factor that Booker and Winston B. Lee consider is the extent to which the procedure may threaten the safety of the individual, and there was no threat to the safety of the individual here. As the court has noted, this is not a case like Booker where the defendant was intubated and paralyzed and where the officers should have gotten a warrant to do the anal cavity search. This is not a case like Schmerber where there was a needle prick of the arm that should be done by medical personnel. This was simply an instance like many instances that take place in jails where the officers had to visualize the buttocks area of the defendant in order to determine if contraband was being hidden there. The second factor that Booker looks to is the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity. And the cases that find that behavior by officers is unreasonable tend to be cases where this type of strip search is done in the open or in a place that is not private to the individual. Here the police officers did exactly what they're supposed to do. They took him to the police station. They did the search in a private room with other male officers such that his dignity was not unnecessarily intruded upon by the search. And finally, the last factor that Booker considers  Here the officers had probable cause that he was hiding drugs, probably heroin, in his buttocks cavity. And under all those bases, the search was absolutely proper under Booker and under Winston v. Lee. There are a number of cases that indicate that even if the court were to find that probable cause was not here and I submit that the officers did have probable cause that Mr. Doxey was hiding drugs, that reasonable suspicion is enough under these circumstances as well. Unless the court has additional questions, the government will submit. Apparently not. Thank you, Your Honor. Thank you. Your opposing counsel says that you're arguing a different theory than was argued at the district court and therefore we should review this matter under plain error review. What do you have to say about that? For the sake of time, Your Honor, we just state that even under plain error review, Mr. Doxey's case would still warrant reversal because this error affected his substantial rights because denial of the motion most certainly affected the outcome of the trial, which is indicative of affecting his substantial rights. And so even under plain error, if this court finds that there was an error, that error did affect his substantial rights. Well, what do you say is the standard of review that we should be using here? In our briefs, Your Honor, we discuss why we believe de novo review should apply specifically that the court during sentencing did have an opportunity to address the search at the jailhouse and ask the government for its theory on the search at the jailhouse, at which point the government said that the search was not done in any way that would be violative of Mr. Doxey's constitutional rights, which is exactly what we contend that it was done in a way that was violative of Mr. Doxey's constitutional rights. Moving to counsel's second two points, probable cause is not the issue that we're contending here. We're contending the search itself. And even if this court finds that the first two prongs under Winston are minimal, that there's a minimal threat to safety here and that there's a minimal intrusion, which obviously we contend that they're both substantial, but if this court finds they're minimal, that still weighs in favor of reversal given that the third prong is nonexistent here. There's not a community interest why this search needed to be performed, why the officers had to take these invasive measures. There's three other methods that we've discussed here today where the officers could have obtained this evidence without creating any risk and without having any intrusion. And then briefly, the government mentioned that there was a call. What should they have done differently? Should they have left him alone? Sure, Your Honor. First, they could have detained him and monitored him for a bowel movement until the evidence naturally revealed itself. But that's making the same assumption that it was inside of him. No, even if it was... I'm sorry, Your Honor. Even if it was between his buttcheeks, if I go to the bathroom, whatever's between my buttcheeks is going to also come out is what I'm getting at there. Secondly, most importantly, they could have taken him to jail. He requested to be taken to jail. He asked on the record, take me to jail, I don't want to do this, take me to jail, and they didn't. And so at jail, he would have been searched according to jail procedures, which have measures in place to ensure that invasive searches are done properly. Importantly, the government mentions that a phone call was made asking for permission to have a complete search of his person. And this court has an opportunity to clarify what complete search of one's person under a parole condition means. And complete search should not mean that an officer can perform the search in any manner, in any way they see fit, in any location, especially when it comes to searches that intrude on a heightened privacy interest. And I see I'm out of time, so I'll wrap up quickly. For those reasons, Your Honor, if there's any further questions, I'm happy to address them. Apparently not, but congratulations on your first argument in the Court of Appeals. Thank you so much. Thank you, and the case is submitted.